IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 12, 2026

**HAMID HOUBBADI v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Montgomery County**
**No. 63CC1-2019-CR-400  Robert Bateman, Judge**
———————————————————

**No. M2025-00650-CCA-R3-PC**
———————————————————

Hamid Houbbadi, Petitioner, was convicted by a jury of first degree premeditated murder, first degree felony murder, and especially aggravated burglary and sentenced to life in prison plus twelve years. *State v. Houbbadi*, No. M2022-01751-CCA-R3-CD, 2023 WL 8525144, at *1 (Tenn. Crim. App. Dec. 8, 2023), *perm. app. denied* (Tenn. May 15, 2024). He was unsuccessful on direct appeal. Petitioner filed a pro se petition for post-conviction relief, amended pro se petition, and second amended pro se petition. He insisted on proceeding pro se. After a two-day hearing, the post-conviction court denied relief. On appeal, Petitioner argues: (1) his Fifth Amendment rights were violated; (2) the State committed a *Brady* violation; (3) he received ineffective assistance of counsel at trial; (4) the post-conviction court failed to address all the issues of "ineffective assistance of counsel caused by the court"; (5) the post-conviction court abused its discretion by declining to appoint elbow counsel; (6) the post-conviction court improperly ruled that service of subpoena by text message is invalid; and (7) he was denied due process of law. After a full review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and STEVEN W. SWORD, JJ., joined.

Hamid Houbbadi, Mountain City, Tennessee, Pro Se.

Jonathan Skrmetti, Attorney General and Reporter; Lacy E. Wilber, Senior Assistant Attorney General; Robert J. Nash, District Attorney General; and Demetrius Daniels-Hill, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

Petitioner was convicted of first degree murder, felony murder, and especially aggravated burglary for the stabbing death of his estranged wife. *Houbbadi*, 2023 WL 8525144, at *1. The proof at trial indicated that Petitioner was prohibited from entering his marital residence by a protective order. On the night of the murder, he parked his car at a nearby Walmart and took an Uber to the marital residence, where he turned off the electricity, armed himself with a butcher knife, and waited in the dark for the victim to return home from work. *Id.* Petitioner attacked the victim with the knife, stabbing her a total of nine times as she tried to escape. *Id.* A neighbor found the victim's body in the neighbor's driveway the next morning, and police found Petitioner inside the home where he had overdosed on prescription medication and cut his wrists and neck with a straight razor. *Id.* As a result of the convictions, Petitioner was sentenced to an effective sentence of life plus twelve years. Petitioner's direct appeal was unsuccessful. *Id.*

Petitioner filed a timely pro se petition for post-conviction relief. In the initial petition, Petitioner argued that his conviction was based on a violation of the privilege against self-incrimination, that his conviction was based on the unconstitutional failure of the prosecution to disclose evidence favorable to Petitioner, otherwise known as a *Brady* violation, and that he received ineffective assistance of counsel. With regard to ineffective assistance of counsel, Petitioner raised multiple allegations including that trial counsel: (1) failed to suppress his confession; (2) failed to investigate and prepare for trial;[1] (3) had a breakdown in communication with Petitioner; (4) failed to file a motion for speedy trial; and (5) failed to argue voluntary manslaughter as a defense. Petitioner also argued that appellate counsel failed to (1) file a motion to allow him to proceed as indigent on appeal; (2) raise a *Brady* claim on appeal; (3) rely on *State v. Burgess*, No. M2009-00897-CCA-R3-CD, 2010 WL 3025524 (Tenn. Crim. App. Aug. 4, 2010), *perm. app. denied* (Tenn. Dec. 7, 2010), on appeal; and (4) withdraw from his case.

The post-conviction court held multiple hearings prior to the evidentiary hearing on the petition for post-conviction relief. Initially, Petitioner filed a motion to proceed pro se and later asked the post-conviction court to appoint "elbow counsel." Petitioner signed a

---

[1] As part of this issue, Petitioner raised thirteen separate complaints about trial counsel's investigation and preparation for trial. These included allegations that trial counsel failed to: (1) suppress his confession; (2) interview a single witness; (3) seek a psychiatric investigation; (4) provide all evidence to Petitioner; (5) hire a private investigator; (6) secure a trial conference; (7) secure a speedy trial; (8) advise Petitioner of his right to testify; (9) object to the admission of evidence; (10) object to erroneous jury instructions; (11) properly cross-examine government witnesses; (12) ask for a jury-out hearing to view crime scene video; and (13) relieve himself as defense counsel.

waiver of counsel form, and the judge signed the form.  Petitioner later filed a motion for discovery, and in that motion, Petitioner again requested elbow counsel.

Prior to the evidentiary hearing, Petitioner filed an amended petition for post-conviction relief and a second amended petition.  These amended petitions appear to be substantially similar to the initial petition for post-conviction relief.  In the second amended petition, Petitioner again asserted that he did not want appointed counsel.  Subsequently, Petitioner filed a motion for elbow counsel.  The post-conviction court denied the motion, informing Petitioner that he could proceed pro se or could have an appointed attorney, but he could not have both.

Petitioner made several discovery requests in advance of the evidentiary hearing, including a request for the phone records for seven cell phones that belonged to the victim and one that belonged to Petitioner.  The State agreed to provide the records but stated that there were only records for four cell phones that belonged to the victim and one cell phone that belonged to Petitioner.  The records were on a thumb drive that the State intended to hand to Petitioner.  The State further stated that "some" cell phones had been found but that the State was unable to access the data on all the phones.  Specifically, counsel for the State informed the court that they possessed data from five cell phones total—four from the victim and one from Petitioner.  The State also gave four CDs to Petitioner, each containing an interview that Petitioner requested.  Petitioner asked if the CDs were in MP3 format because that is the format used in the prison law library.  Counsel for the State informed the post-conviction court that it had the required software to view the data on the CDs.  The post-conviction court informed Petitioner that he was provided with the physical media as if he were an attorney because he chose to represent himself.  The post-conviction court noted Petitioner had asked for several subpoenas and reset the hearing for a later date.

At the next hearing, the post-conviction court again asked Petitioner if he wished to continue to represent himself.  Petitioner responded affirmatively.  Petitioner asked the State to convert the data on the thumb drive to CD format so that he could access the information.  Counsel for the State admitted that he worked on converting the files but had been unable to convert all the files to a CD.  Counsel for the State added that his expert was working on transferring the remaining information to a CD.  The post-conviction court ordered the State to convert the information to a CD or DVD.  The State turned six CDs over to Petitioner.  The State explained they were unable to copy a "reader report" and Cellebrite report.  Further, the State explained that the data from Petitioner's phone was on a damaged disc, but the State's expert was working on transferring the data to a new CD.

At the next hearing, Petitioner again complained about the cell phone data and claimed he only received four CDs from the State.  Counsel for the State explained that there were two more CDs that were ready to send to Petitioner including the Cellebrite

report from Petitioner's phone and the data from the victim's Samsung Luna phone. Petitioner asked the post-conviction court to "dismiss" based on a failure to provide discovery. The court denied the request.

During the next hearing, the post-conviction court again asked Petitioner if he wished to continue to represent himself. He responded affirmatively but told the post-conviction court he wanted elbow counsel because it was hard to hire an expert as a pro se litigant. The post-conviction court told Petitioner he could not have "the best of both worlds." The post-conviction court offered to appoint counsel but cautioned Petitioner that he would have to "follow" appointed counsel's guidance and would not be permitted to represent himself and have elbow counsel. Petitioner continued to insist on representing himself while asking for help "in the outside." The post-conviction court explained that there was no "guaranteed right" to elbow counsel, and that Petitioner had waived his right to counsel. The post-conviction court asked yet again if Petitioner wished to have an attorney appointed, to which he replied, "No, that's not what I want[,] Your Honor." The post-conviction court again denied Petitioner's request for elbow counsel.

*Evidence at the Post-conviction Hearing*

At the evidentiary hearing, the post-conviction court again asked Petitioner if he wished to represent himself. Petitioner replied affirmatively. Petitioner argued that the post-conviction court erred because it ruled that three subpoenas sent by Petitioner via text message were invalid. The post-conviction court reminded Petitioner that pursuant to Rule 17, service of a subpoena must be by personal service, or the person must accept service. The post-conviction court informed Petitioner that if he disagreed with the ruling he could raise the issue on appeal.

A divorce attorney testified that he met with Petitioner at his office but did not recall all the specifics of the meeting with Petitioner. The divorce attorney testified that he gave Petitioner a refund, and he believed Petitioner filed a complaint against him with the Board of Professional Responsibility. The divorce attorney believed that he sent a response to the complaint. The divorce attorney remembered that Petitioner wanted a divorce and an order of protection. The divorce attorney sent Petitioner to a different attorney.

A second divorce attorney testified that he met with Petitioner on October 1, 2018. Petitioner signed a contract and paid the second divorce attorney $1000. Petitioner asked for a refund, filed a complaint against him with the Board of Professional Responsibility, and sued him in court. The second divorce attorney testified that the victim had a lawyer. The victim's lawyer reached out to him and provided him with a proposed order that reflected the agreement between Petitioner and the victim. The second divorce attorney gave the victim's attorney permission to sign his name on the proposed order.

The second divorce attorney testified that he informed Petitioner that the order of protection against Petitioner for the victim was still in place on October 9. The second divorce attorney recalled that the order was amended to allow Petitioner time on a specific date to access the marital residence to get his clothing and medication. The second divorce attorney stated Petitioner knew that he was only permitted to be in the marital residence on that specific date. The second divorce attorney testified that the order of protection became moot after the victim died and that as a result of the victim's death, there was no hearing on the merits of the order of protection.

The victim's attorney testified that the victim filed a petition for an order of protection with the help of an advocate. He knew that the victim spent some time at a women's shelter. The victim's attorney recalled a hearing on October 9, 2018, at which he sought to have the order of protection extended. The hearing was postponed to November. The victim's attorney did not know what happened in November and recalled there was never a full hearing on the merits of the order of protection because the victim was murdered. The victim's attorney explained that the victim's death made the hearing moot and therefore the petition was dismissed.

Debra Kolofsky, a retired detective with the Clarksville Police Department, testified at the hearing. She explained that she was a mobile forensic examiner for the last ten years of her employment with the police department. She recalled reviewing six or seven mobile devices in Petitioner's case but could not recall how many in total she examined. She recalled examining Petitioner's phone.

Ms. Kolofsky explained that it was possible to access a phone even without the passcode. If she was unable to unlock a phone, she sought advice and help from the United States Secret Service ("Secret Service"). Ms. Kolofsky testified she received a pink and gray Samsung phone in Petitioner's case, but she could not access the phone, so she asked the Secret Service for help. They could not access the phone either.

On cross-examination, Ms. Kolofsky was deemed an expert in mobile device forensic investigation. She confirmed that she received seven cell phones in Petitioner's case. She could not access the data in the victim's black LG phone. She recalled that a warning screen on the phone indicated that one additional attempted login would result in a wipe of the data on the phone. Ms. Kolofsky testified that the Secret Service could not access the phone either. Additionally, she was unable to access a white iPhone that belonged to the victim.

Ms. Kolofsky successfully accessed the victim's black Samsung Luna phone. A Cellebrite PDF, the "legal standard" for phone data, was prepared for the phone as well as

- 5 -

a Cellebrite Reader report. Ms. Kolofsky explained that it required specialized training to read and understand the report.

Ms. Kolofsky was able to download data from the victim's white and pink iPhone 4. She generated a Cellebrite PDF and a Reader report from that data. Ms. Kolofsky was unable to access the victim's pink and gray Samsung Edge 7 but was able to access the SIM card in the phone. The SIM card contains the phone number. The number matched the phone number for the victim. Ms. Kolofsky accessed the victim's white Samsung Galaxy 3 phone and black HTC Evo phone. For these two phones, she generated both types of Cellebrite reports. In total, Ms. Kolofsky was able to access four of the seven phones that belonged to the victim.

Ms. Kolofsky successfully extracted data from Petitioner's phone and generated both types of Cellebrite reports for that data. She explained that the department saved the data on a CD or a DVD depending on the amount of data on the phone. Petitioner's phone data was saved on both a USB drive and "[d]iscs." Ms. Kolofsky sent a disc of Petitioner's cell phone data to the State, but there was something wrong with the disc. At the time of the hearing, Ms. Kolofsky had been unable to get a copy of Petitioner's cell phone data. Ms. Kolofsky further explained that the data was saved to a master storage system at the police department. Copies of the data were given to the State and defense prior to trial. When she retired, the DVD remained in the file she created for Petitioner's case and this DVD was corrupted.

Counsel for the State noted that he was provided data from the Cellebrite Reader from Petitioner's phone from a USB drive. Counsel noted that "they" could not use a USB drive but sent a copy of the disc to Petitioner. Counsel understood that the PDF was still with the Clarksville Police Department and "intend[ed] to provide that" information.

Petitioner acknowledged that he received four Cellebrite reports from the victim's phones. The post-conviction court asked Petitioner if he wanted to continue the hearing until after he received the data from his own phone, but Petitioner declined.

Detective Jason Kurtich, the lead investigator on Petitioner's case, testified that he was not contacted by Petitioner's attorney prior to trial. Detective Kurtich issued an arrest warrant for Petitioner on October 20, 2018. Detective Kurtich and Detective Cunningham[2] interviewed Petitioner on October 22, 2018, when Petitioner was in Vanderbilt University Medical Center. Detective Kurtich did not issue *Miranda* warnings to Petitioner before he talked to him. Detective Cunningham asked Petitioner if he wanted to tell him what happened, but Petitioner said he did not want to say anything without a lawyer. Detective

---

[2] Detective Cunningham's first name was not provided at the hearing.

Kurtich testified that they did not talk about the murder, but asked Petitioner general questions. Detective Kurtich was aware that Petitioner was on pain medication but asked Petitioner if he would consent to searches of his phone, residence, marital residence, vehicle, and DNA. Petitioner agreed and signed consent forms. After the detectives left the hospital, they discussed whether Petitioner had the ability to consent because of his condition. They did not use the consent forms and instead got search warrants for the searches. Once the officers got the search warrants, they searched Petitioner's phone. The search of the phone led officers to get a subpoena for Uber records.

Trial counsel testified that he was licensed to practice law in 2007. He primarily practiced criminal defense and worked for the Public Defender's office until 2011 until he started his own private practice. In private practice, he concentrated solely on criminal defense. Trial counsel represented Petitioner at trial in January of 2022. In his opinion, he was one of the most experienced criminal attorneys in town.

Trial counsel explained that he prepared an eight-page document for himself after he combed through "voluminous" discovery materials in Petitioner's case. Trial counsel had a habit of preparing a document like this for every case in Circuit Court. The jury did not know about the information in this internal document.

Trial counsel developed a list of potential witnesses but did not interview any of the people on the list because they did not have any information relevant to the murder. In fact, both divorce attorneys would have likely testified that there was an order of protection in effect at the time of the murder and that Petitioner had agreed to stay out of the marital residence. Trial counsel did not want the jury to hear that Petitioner had filed for divorce.

Trial counsel filed various motions to keep certain facts out of the trial because they provided a motive for the murder. Trial counsel opined that it was a defense attorney's job to keep certain evidence out of a trial. For example, trial counsel did not tell the jury that the victim was waiting on a green card, that Petitioner filed for divorce prior to the murder, or that the victim had an order of protection against Petitioner. Trial counsel did not find those facts relevant to the defense and thought that they could have provided a motive for the murder.

Trial counsel testified that he did not believe Detective Kurtich violated *Miranda* while talking to Petitioner at the hospital. Moreover, trial counsel commented that even if there was a *Miranda* violation, the State likely would have discovered the information during their investigation. Therefore, trial counsel did not find any reason to challenge Petitioner's statements to the detectives.

Trial counsel did not hire an investigator. He did not think that there was anything to investigate. The Walmart surveillance footage showed Petitioner getting into an Uber, the Uber driver confirmed she drove Petitioner to the marital residence, electric company records showed that the electricity was shut off at the residence on the night of the murder, the victim was found dead in the neighbor's driveway, and responding officers found Petitioner injured inside the residence. Trial counsel did not think hiring an investigator would lead to the discovery of any exculpatory evidence.

Trial counsel explained that there was not a particularly good defense at trial simply because of the amount of evidence the State had against Petitioner. Trial counsel tried to argue that it was a knowing killing but recognized there was "overwhelming" evidence of premeditation. Trial counsel made the strategic decision not to argue that the killing was manslaughter because he wanted to preserve his credibility with the jury.

Trial counsel recalled that Petitioner wanted him to argue that the order of protection was dismissed on November 13, 2018. Trial counsel acknowledged that the date of the dismissal was after the date of the victim's death and not relevant to the trial. Specifically, trial counsel did not want the jury to know that the order of protection was dismissed because the victim was dead.

Trial counsel agreed that the issue in the case was not an issue of finding out who committed the murder. Trial counsel did not think that a psychological evaluation was necessary because he had "a lot of experience with defendants [who] had diminished capacity issues" or competency issues. Trial counsel testified that he talked with Petitioner and his sister on multiple occasions and neither indicated that there was a history of mental health issues. Trial counsel acknowledged that the facts of the case revealed "careful premeditation" by Petitioner and he did not think that Petitioner's suicide attempt indicated a mental health issue. If anything, trial counsel opined that Petitioner's behavior was "post act," which would have gone to diminished capacity.

Trial counsel testified that he did not recall Petitioner asking him for subpoenas for immigration paperwork submitted in August or September. Regardless, trial counsel testified that the paperwork was not relevant to the issues at trial.

Trial counsel knew that Petitioner had a different attorney prior to his representation. That attorney moved out of state and withdrew. Trial counsel recalled that he asked for a continuance in Petitioner's case because he had another client who was incarcerated prior to Petitioner. The other client was accused of murder in two separate cases. Trial counsel also recalled a delay in Petitioner's case because the original trial judge was appointed to the Court of Criminal Appeals, and the trial docket was affected as a result of the

appointment. However, trial counsel did not think that the delay in the trial affected his representation of Petitioner.

Trial counsel commented that the State did not want to offer any type of plea deal because it was a "textbook" case of premeditated murder. Trial counsel asked the State for a plea deal, and they refused.

Trial counsel could not recall how many cell phones the State seized in Petitioner's case. Trial counsel stated that he did not argue about how many cell phones the State listed in their notice of evidence versus the number of cell phones they introduced or used as evidence at trial because the State did not provide notice that they were going to use any information or data from the cell phones at trial. Trial counsel confirmed that he received the evidence from the cell phones and it took him at least a day and a half to review the information.

Trial counsel agreed that he did not take calls from clients who were incarcerated. He explained that the calls were not privileged. The "last thing" he wanted for a client was to have the State listen in on a jail phone call. Because he did not take phone calls from jail, trial counsel went to see Petitioner in jail on a frequent basis.

Trial counsel recalled Petitioner filed several pro se motions including a motion to dismiss the case, a motion to return Petitioner's property, and a motion to "fire" trial counsel. Trial counsel acknowledged that he did not read all of Petitioner's pro se motions because they were "baseless" and he got tired of "reading lies" espoused by Petitioner. Trial counsel explained to Petitioner that if he insisted on a new attorney, there would be a "substantial" delay in the trial process. Trial counsel recalled that the judge asked Petitioner if he wanted a new attorney, and Petitioner declined. Trial counsel thought this occurred on the first day of trial.

Trial counsel also recommended that Petitioner not testify at trial because the State would argue that the order of protection should and could be introduced if Petitioner testified. Additionally, trial counsel thought that Petitioner would testify that the victim stole $11,000 from him. Trial counsel explained that this was an additional motive for the killing. Trial counsel was concerned that the State would cross-examine Petitioner about his actions leading up to the murder. Trial counsel remembered that the trial court questioned Petitioner about his decision to testify. Trial counsel felt that it was a knowing waiver.

Trial counsel filed a motion to withdraw prior to sentencing. Trial counsel explained that Petitioner made "incredibly ridiculous" allegations of misconduct.

- 9 -

Direct appeal counsel testified that he was licensed in 2005 and started as a general practitioner who handled some criminal law. He explained that his practice evolved to solely criminal law in the ten years prior to the post-conviction hearing, and for six to eight years he primarily focused on criminal appeals.

Direct appeal counsel testified that on appeal in Petitioner's case, he argued that the order of protection was not finalized at the time of the murder. Therefore, Petitioner could not be guilty of aggravated burglary to support a conviction for felony murder.

Direct appeal counsel filed a timely Rule 11 application for permission to appeal to the Tennessee Supreme Court even though Petitioner wanted to file one pro se. The court denied the request to withdraw, so counsel prepared the application with the issues Petitioner wanted, even though counsel did not think the issues had merit.

Petitioner testified at the hearing, even though he represented himself. He claimed that the State committed a *Brady* violation by failing to provide him with phone records that would have shown "there was no surprise attack, and this was a fight that occurred inside the house" between him and the victim. Petitioner explained that he was inside the home when the victim was talking on the phone and that she talked on the phone for about thirty minutes. Petitioner was under the impression that the victim was going to hire a "Mexican" to kill him.

Petitioner claimed that the State did not provide him with the order that dismissed the order of protection. Petitioner admitted that he was arrested for the victim's murder prior to the dismissal of the order of protection.

Petitioner insisted he was on pain medication when Detective Kurtich interviewed him in the hospital. Petitioner claimed they "tricked" him into providing the passcode to his phone and that allowed officers to gain access to information about his Uber ride. Petitioner complained extensively about trial counsel, including his failure to interview witnesses, request a psychological evaluation, hire a blood spatter expert, provide a copy of the data from the Samsung Edge phone, and provide a copy of a magazine on which the victim had written the name and phone number of an attorney. Petitioner also complained that counsel "wrongly advised" him not to testify and failed to object to the introduction of Petitioner's statement, cell phone records, and cell phone data at trial.

On cross-examination, Petitioner admitted that the victim was dead when the order of protection was dismissed. Petitioner agreed that the victim could not come to court because she was dead. Petitioner acknowledged that he gave permission for the police to search his phone and car. Petitioner insisted that trial counsel did not provide him with discovery but agreed that trial counsel gave him the phone records and medical records.

Petitioner claimed that he did not receive the records from the Samsung Edge phone and insisted trial counsel should have told him that the State could not access the phone.

As to his decision not to testify at trial, Petitioner claimed he was "scared" because trial counsel told him that the State would introduce the order of protection into evidence if he testified. Petitioner said that he trusted trial counsel, but that trial counsel "tricked" him into not testifying. Petitioner agreed that he testified at the *Momon* hearing that he did not want to testify but claimed at the post-conviction hearing that he wanted to testify to tell the jury his version of the story.

By a written order entered April 25, 2025, the post-conviction court denied the petition. Petitioner appealed.

*Analysis*

On appeal, Petitioner argues that the post-conviction court improperly denied post-conviction relief. Specifically, he argues: (1) his Fifth Amendment rights were violated; (2) the State committed a *Brady* violation; (3) he received ineffective assistance of counsel at trial; (4) the post-conviction court failed to address all the issues of "ineffective assistance of counsel caused by the court"; (5) the post-conviction court abused its discretion by declining to appoint elbow counsel; (6) the post-conviction court improperly ruled that service of subpoena by text message is invalid; and (7) he was denied due process of law. The State insists that the post-conviction court properly denied relief. We will address each of Petitioner's issues in turn.[3]

In order to prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). As such, we review a post-conviction court's findings of fact under a de novo standard with a presumption that those findings are correct unless otherwise proven by a preponderance of the evidence. *Id.* (citing Tenn. R. App. P. 13(d); *Henley*, 960 S.W.2d at 578). The post-conviction court's conclusions of law and application of the law to factual findings are reviewed de novo with no presumption of correctness. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015).

When reviewing the post-conviction court's findings of fact, this Court does not reweigh the evidence or "substitute [its] own inferences for those drawn by the [post-conviction] court." *Fields*, 40 S.W.3d at 456. Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual

---

[3] We have reordered the issues in order to facilitate our review.

- 11 -

issues raised by the evidence are to be resolved by the [post-conviction court]." *Id.* (citing *Henley*, 960 S.W.2d at 579); *see also Kendrick*, 454 S.W.3d at 457.

## *Fifth Amendment Rights*

Petitioner argues on appeal that his Fifth Amendment rights were violated because officers did not issue *Miranda* warnings at the hospital before they obtained his consent to search his phone and vehicle after he told them he did not want to talk without an attorney. *Miranda v. Arizona*, 384 U.S. 436 (1966). The State disagrees, noting that after Petitioner gave verbal consent, Detective Kurtich obtained search warrants for every item.

On direct appeal, this Court noted that Detective Kurtich testified that he obtained search warrants for Petitioner's "DNA, vehicle, marital residence, and cell phone despite [Petitioner's] having given his consent for those searches." *Houbbadi*, 2023 WL 8525144, at *5. The post-conviction court found Detective Kurtich provided "unrefuted testimony" that he secured "search warrants" that were "based on independent information and did not rely on any consent given" by Petitioner. The post-conviction court also determined that Petitioner could have raised this issue on direct appeal and failed to do so, and the issue is now waived. We agree. Tennessee Code Annotated section 40-30-106(g) provides, "[a] ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented unless one of two exceptions apply." Neither exception applies to Petitioner's argument. This issue is waived.

To the extent Petitioner also argues that the State somehow unlawfully obtained the passcode to his phone which allowed the State to access his Uber account, this issue is also waived. Petitioner did not ask any questions at the post-conviction hearing to support his argument, merely insisting on appeal that Detective Kurtich lied at the hearing and his testimony was not "unrefuted" as the post-conviction court determined. The post-conviction court accredited the testimony of the detective, and we cannot second-guess the post-conviction court's credibility findings. *Fields*, 40 S.W.3d at 456. Petitioner is not entitled to relief.

## *Brady Violation*

Petitioner next argues that the post-conviction court improperly concluded that the State did not commit a *Brady* violation when it failed to disclose a trial court order dismissing the victim's order of protection that was entered on November 13, 2018. *See Brady v. Maryland*, 373 U.S. 83 (1963). Petitioner also argues on appeal that the State failed to provide all cell phone records to him. The State argues the post-conviction court properly concluded that there was no *Brady* violation. Specifically, the State contends that

even if the State had the order dismissing the order of protection in its possession, the order was not exculpatory. Moreover, the State insists that it provided Petitioner all the information it had from the cell phone records.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution and article I, section 8 of the Tennessee Constitution afford every criminal defendant the right to a fair trial. *See Johnson v. State*, 38 S.W.3d 52, 55 (Tenn. 2001). Therefore, the State has a constitutional duty to furnish a defendant with exculpatory evidence pertaining to his guilt or to the potential punishment faced by a defendant. *Brady*, 373 U.S. at 87.

In order to show a due process violation pursuant to *Brady*, a defendant must prove by a preponderance of the evidence that (1) he requested the information, unless it is obviously exculpatory, (2) the State must have suppressed the information, (3) the information must be favorable to the accused, and (4) the information must be material. *State v. Edgin*, 902 S.W.2d 387, 389 (Tenn. 1995). Favorable evidence includes that which "challenges the credibility of a key prosecution witness." *Johnson*, 38 S.W.3d at 56-57 (internal quotation marks and citation omitted). Evidence is material when "'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id.* at 58 (quoting *Edgin*, 902 S.W.2d at 390).

Here, the testimony at the post-conviction hearing indicated that the trial court dismissed the order of protection because the victim was deceased. The post-conviction court determined that the evidence of the dismissal was not exculpatory and would not be favorable to Petitioner. We agree.

With respect to the data from the cell phone records, in hearings leading up to the post-conviction evidentiary hearing, Petitioner repeatedly argued that he did not have complete reports from the cell phones that were seized by law enforcement in his case. Ms. Kolofsky testified about the analysis that was performed on the cell phones in Petitioner's case and the reports that were provided. Petitioner complained that the State provided some of this information on a flash drive that he could not access. The State then provided the information to Petitioner on a DVD disc and Petitioner claimed he could not access it on the computer. Petitioner insists that the cell phone records would show the victim was on the phone for a period of time at the marital residence prior to her death. The post-conviction court determined that the State turned over all the evidence in their possession and, in any event, that the evidence was not exculpatory. The post-conviction court even offered a continuance for Petitioner to have more time to receive and review the data from the phone. Petitioner declined the offer. We agree with the post-conviction court's assessment – the evidence was not exculpatory. Petitioner is not entitled to relief on this issue.

*Failure to Appoint Elbow Counsel*

Petitioner acknowledges that he has no constitutional right to elbow counsel but he likens the right to appointment of elbow counsel to the right to appointment of counsel in an evidentiary hearing on post-conviction. He complains that the post-conviction court "made no finding why it declined to appoint elbow counsel" for Petitioner and insists the post-conviction court abused its discretion. The State counters that Petitioner knowingly and voluntarily waived his right to counsel and repeatedly told the post-conviction court that he wanted to represent himself.

As Petitioner correctly acknowledges, there is no constitutional right to effective assistance of counsel in a post-conviction proceeding. *Frazier v. State*, 303 S.W.3d 674, 680 (Tenn. 2010); *Stokes v. State*, 146 S.W.3d 56, 60 (Tenn. 2004); *House v. State*, 911 S.W.2d 705, 712 (Tenn. 1995). There is a statutory right to post-conviction counsel. T.C.A. § 40-30-107(b)(1); *Frazier*, 303 S.W.3d at 680. The rationale for this statutory right "is to afford a petitioner the full and fair consideration of all possible grounds for relief." *Frazier*, 303 S.W.3d at 680. "This statutory right does not, however, serve as a basis for relief on a claim of ineffective assistance of counsel in a post-conviction proceeding and does not include 'the full panoply of procedural protection that the Constitution requires be given to defendants who are in a fundamentally different position—at trial and on first appeal as of right.'" *Id.* (quoting *House*, 911 S.W.2d at 712). "Due process in the post-conviction context requires merely that 'the defendant have the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Brent v. State*, No. W2018-01968-CCA-R3-PC, 2020 WL 1972332, at *11 (Tenn. Crim. App. Apr. 24, 2020) (quoting *Stokes*, 146 S.W.3d at 61), *perm. app. denied* (Tenn. July 23, 2020).

In other words, "[t]he appointment of counsel assists in ensuring that a petitioner asserts all available grounds for relief and fully and fairly litigates these grounds in a single post-conviction proceeding." *Leslie v. State*, 36 S.W.3d 34, 38 (Tenn. 2000); *see also Frazier*, 303 S.W.3d at 680 (emphasizing "that a post-conviction petitioner does not stand in the same shoes as the criminally accused" and stating that "the petitioner seeking post-conviction relief is entitled to counsel 'not to protect them from the prosecutorial forces of the State, but to shape their complaints into the proper legal form and to present those complaints to the court'" (citation omitted)). The statutory right to counsel, and indeed the entire post-conviction process itself, "may be denied to a petitioner who abuses the post-conviction process." *Leslie*, 36 S.W.3d at 39 (citing *Cazes v. State*, 980 S.W.2d 364, 365 (Tenn. 1998)). Moreover, a "[p]risoner[] may represent themselves if they do not request a lawyer or if they decline to accept the offer of an appointed lawyer." *Lovin v. State*, 286 S.W.3d 275, 285 (Tenn. 2009).

- 14 -

Our standard of review of the post-conviction court's determination that the post-conviction petitioner waived his statutory right to counsel "is whether the trial court abused its discretion in . . . requiring the petitioner to proceed without counsel." *Leslie*, 36 S.W.3d at 37-38.

Here, Petitioner filed a "Motion to Allow [Petitioner] to Represent Himself." In this motion, Petitioner espoused that he wished to represent himself, but that he wanted "elbow counsel only for the sake of seeking witnesses, experts, and physical evidence." The trial court held a multitude of hearings prior to the evidentiary hearing. At the first of these hearings, the post-conviction court asked Petitioner if he wanted to represent himself. Petitioner answered affirmatively. The post-conviction court notified Petitioner that he would be held to the same standard as an attorney. Petitioner signed a form indicating he wished to waive his right to counsel. At another hearing, Petitioner continued to insist that he wished to represent himself. On a different date, Petitioner again stated he wished to represent himself yet asked for elbow counsel. The post-conviction court told Petitioner he could not have it "both ways." On a different date, the post-conviction court told Petitioner it could and would appoint counsel but cautioned Petitioner that he would have to follow the guidance of the appointed attorney. Petitioner told the court that was "not what [he] want[ed]." Petitioner reiterated his desire to represent himself at the evidentiary hearing.

The post-conviction court did not abuse its discretion. Petitioner repeatedly and adamantly indicated his desire to represent himself. In fact, the record supports that the post-conviction court anticipated Petitioner's maneuver and consistently encouraged Petitioner to take appointed counsel. He is not now entitled to take back his knowing and voluntary waiver in order to try to get another chance at a post-conviction hearing with the assistance of counsel. Petitioner is not entitled to relief on this issue he himself manufactured.

*Failure to Allow Subpoena by Text Message*

Petitioner argues that the post-conviction court improperly held that service of a subpoena by a text message was invalid and that he was denied compulsory process. Specifically, Petitioner refers to a hearing at which he informed the post-conviction court that two witnesses were evading service. The post-conviction court informed Petitioner that he was responsible for making sure the subpoenas were served on the witnesses. Petitioner claims that the portion of the hearing during which the trial court made its ruling was not transcribed. The State insists that the post-conviction court did not abuse its discretion and that he has failed to show that he is entitled to any appellate relief.

- 15 -

The record reflects that Petitioner insisted on representing himself. The post-conviction court gave Petitioner eleven blank subpoenas and granted a motion at a later date for additional blank subpoenas. At a hearing on February 5, 2025, the following exchange occurred:

> PETITIONER: [Y]ou ruled that my three (phonetic) subpoena I sent by text message, they were unvalid (sic).
> THE COURT: I find that a service of subpoena by text message is not valid service, correct.
> PETITIONER: Okay, because I (inaudible) United States Watkins, the (inaudible) of United States serve a witness with a subpoena by taking a picture of the subpoena and sending it to the witness in their cell phone.
> THE COURT: The way I view Rule 17, it says that service must be by personal service or the one subpoenaed must accept service. If I am wrong on it, your issue is preserved for appeal but I find that service of a subpoena by a text message, under the Tennessee Rules, is not valid service.
> PETITIONER: Thank you, . . . .

Rule 17 of the Tennessee Rules of Criminal Procedure provides for the method of service of a subpoena "by any person authorized to serve process" who "shall deliver or offer to deliver a copy of the subpoena to the person to whom it is directed or leave a copy with an adult occupant of the person's usual residence." The rule does not contemplate or allow for service of process by text message and we have found no case that interprets the rule any differently. The post-conviction court did not abuse its discretion. Petitioner is not entitled to relief on this issue.

*Ineffective Assistance of Counsel*

The right to effective assistance of counsel is safeguarded by the constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Further,

- 16 -

[b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

*Goad*, 938 S.W.2d at 370 (citing *Strickland*, 466 U.S. at 697). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997). We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. *Granderson v. State*, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

On appeal, Petitioner argues that the post-conviction court improperly denied relief on the basis of ineffective assistance of counsel. Specifically, Petitioner challenges the post-conviction court's conclusions regarding trial counsel's: (1) failure to suppress Petitioner's confession; (2) failure to investigate and prepare for trial; (3) failure to interview a single witness; (4) failure to seek a psychiatric evaluation; (5) failure to hire a private investigator; (6) failure to provide Petitioner with all evidence, including the phone records; (7) failure to secure a trial conference; (8) failure to properly advise Petitioner about whether he should testify; (9) failure to object to the admission of the crime scene video; (10) failure to object to an erroneous jury instruction; (11) failure to object to the prosecutor's statement regarding Petitioner's right to remain silent; (12) failure to relieve himself as counsel; (13) failure to file a motion for speedy trial; and (14) failure to argue Petitioner committed voluntary manslaughter.[4] As to appellate counsel, Petitioner argued that the post-conviction court improperly denied relief on the basis of counsel's failure to rely on *State v. Burgess*.

*Failure to Suppress Petitioner's Confession*

Petitioner argues on appeal that the post-conviction court improperly determined that trial counsel made a tactical decision not to challenge statements made by Petitioner. Specifically, Petitioner refers to statements he made to officers at the hospital after he told officers that he did not want to talk to them without a lawyer present. Petitioner argues

---

[4] In the order denying relief, the post-conviction court also addressed Petitioner's complaint that trial counsel failed to file certain motions and failed to cross-examine witnesses. Petitioner does not list these as separate issues in his brief on appeal. Accordingly, we deem these issues abandoned for purposes of appeal.

that giving the officers the passcode to his phone was a confession. The proof at the hearing shows that Petitioner gave the officers information about where he lived despite telling them he did not want to talk to them without a lawyer and provided them with the passcode to his phone. Trial counsel testified that he had a responsibility not to file frivolous motions. The post-conviction court determined that there was no violation of Petitioner's right against self-incrimination so trial counsel could not be found ineffective for failing to file a motion to suppress that would have been unsuccessful. Petitioner has failed to show clear and convincing evidence that giving his passcode could be interpreted as a confession. Moreover, Petitioner has not shown that a motion to suppress would have been successful and has cited to no cases supporting his position. *See Phillips v. State*, 647 S.W.3d 389, 404 (Tenn. 2022) (citations omitted) (stating that "to establish a successful claim of ineffective assistance of counsel based on counsel's failure to file a motion to suppress evidence on Fourth Amendment grounds, the petitioner must prove: '(1) a suppression motion would have been meritorious; (2) counsel's failure to file such motion was objectively unreasonable; and (3) but for counsel's objectively unreasonable omission, there is a reasonable probability that the verdict would have been different absent the excludable evidence.'"). Petitioner is not entitled to relief on this issue.

*Failure to Investigate or Prepare for Trial or Interview Witnesses*

On appeal, Petitioner complains that counsel did not investigate prior to or prepare for trial by interviewing witnesses. First, he insists that trial counsel failed to interview witnesses prior to trial. In his brief, Petitioner complains that trial counsel did not call the divorce attorneys and/or the victim's attorney at trial and that the post-conviction court prevented him from presenting three witnesses, Zouhair Elmaliki, Samar Benmansour, and Farah Alsoraify at the post-conviction hearing. The State argues that any evidence would have been inculpatory rather than exculpatory and that the three witnesses, other than the divorce attorneys and victim's attorney, did not testify at the hearing so Petitioner cannot show prejudice. We agree. As to the divorce attorneys and the victim's attorney, Petitioner failed to provide clear and convincing evidence that he was prejudiced by trial counsel's failure to call these witnesses at trial. As evidenced by their testimony at the post-conviction hearing, they would have testified to the marital problems between Petitioner and the victim as well as the existence of the order of protection, something trial counsel tried to minimize or even exclude from the trial as he felt it was damaging to Petitioner's case and tended to provide a motive for the killing. This was a reasonable strategic decision by trial counsel. As to the other witnesses, Petitioner failed to call them to testify at the hearing. Without knowing what their testimony would have been, Petitioner cannot show that trial counsel was ineffective. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Petitioner is not entitled to relief on this issue.

- 18 -

*Failure to Seek Psychiatric Evaluation*

Petitioner also complains that trial counsel was ineffective because he failed to seek a psychiatric evaluation prior to trial. He claims that the motion would have been granted and he was prejudiced because of trial counsel's failure to do so. The State disagrees, pointing to trial counsel's testimony that Petitioner's "careful premeditation" and the interaction he had with both Petitioner and his sister, did not indicate Petitioner needed a psychological evaluation.

The post-conviction court determined Petitioner did not present any evidence that an evaluation would have shown diminished capacity or that he could not have acted with premeditation. We agree. Petitioner has failed to carry his burden on this issue and is not entitled to relief. *See Black*, 794 S.W.2d at 757.

*Failure to Hire a Private Investigator*

Petitioner next challenges the post-conviction court's conclusion that trial counsel was not ineffective for failing to hire a private investigator. The State contends Petitioner cannot show ineffective assistance of counsel without providing evidence to support the conclusion that a private investigator's findings would have affected the outcome.

The post-conviction court found Petitioner had the burden of proof and "presented no proof that the result of the proceedings would have been different if a private investigator had been hired." We agree. *See Black*, 794 S.W.2d at 757; *Adkins v. State*, No. E2020-01213-CCA-R3-PC, 2023 WL 3985357, at *5 (Tenn. Crim. App. June 14, 2023), *perm. app. denied* (Tenn. Nov. 20, 2023) (finding a petitioner fails to show trial counsel was ineffective when they produce no evidence that a private investigator's findings would have affected the outcome).

*Failure to Provide Petitioner with All Evidence*

Next, Petitioner insists that trial counsel failed to provide him with all the evidence in his case, specifically referring to the cell phone records, and was ineffective as a result. Petitioner fails to cite any case law to support his assertion. The State insists that the post-conviction court properly determined Petitioner failed to meet his burden by failing to present any evidence to support his argument.

The post-conviction court found Petitioner made "vague claims" that trial counsel "withheld evidence" but presented no proof "that the result of the proceedings would have been different if trial counsel had presented any additional evidence." We agree. Without

proof that trial counsel failed to provide evidence, Petitioner cannot fulfill his burden. Petitioner is not entitled to relief on this issue.

*Failure to Secure a Trial Conference*

Petitioner complains that trial counsel canceled/failed to secure a trial conference and waived his presence at a conference and that the post-conviction court improperly determined trial counsel was not ineffective. Again, Petitioner does not cite any authority for his argument and makes vague assertions about counsel's agreement to a continuance of a trial conference because there was no interpreter. The State does not appear to address this issue in its brief.

The post-conviction court found that trial counsel testified there was nothing to address at a trial conference and that he would have required Petitioner to be present if there were any matters that needed to be discussed. The post-conviction court found that Petitioner did not present any evidence at the hearing that the result of the proceedings would have been different if he had been present for a trial conference "at which nothing occurred." We agree. Petitioner has failed to satisfy his burden on this issue and is therefore not entitled to relief.

*Failure to Advise Petitioner Not to Testify*

Petitioner argues that trial counsel wrongly advised him not to testify at trial. As part of this argument, he admits that he "signed a waiver" but insists that it contained the "trial attorney's words" and that trial counsel told him "what to say." Petitioner claims that trial counsel told him not to testify to take revenge on Petitioner for trying to remove him as trial counsel, citing *State v. Burgess*, No. M2009-00897-CCA-R3-CD, 2010 WL 3025524 (Tenn. Crim. App. Aug. 4, 2010), *perm. app. denied* (Tenn. Dec. 7, 2010), and *State v. Rivera*, No. E2019-00798-CCA-R3-PC, 2020 WL 5988550 (Tenn. Crim. App. Oct. 9, 2020), *perm. app. denied* (Tenn. Feb. 5, 2021), as support for his argument that the outcome of the proceeding would have been different because in both of those cases, the defendants were convicted of second degree murder. The State counters that the record reflects the trial court conducted a *Momon* hearing at which Petitioner knowingly and voluntarily waived the right to testify and disagrees with Petitioner's argument that the result of the proceeding would be different had Petitioner testified at trial.

The post-conviction court found that Petitioner "presented no proof that the result of the proceedings would have been different if he had testified." We agree. Bald assertions and citations to two cases where a defendant was convicted of a lesser included offense do not amount to clear and convincing evidence that the result of the proceedings

would have been different if Petitioner testified at trial. Petitioner did not sustain his burden and is not entitled to relief on this issue.

*Failure to Object to the Admission of the Crime Scene Video*

Petitioner also argues that trial counsel was ineffective for failing to object to the admission of the crime scene video and claims that trial counsel did not watch the video prior to trial. The State notes that trial counsel objected to the video and that the video was redacted prior to viewing by the jury.

The post-conviction court determined this issue had no merit. We agree. The record reflects that trial counsel objected to the introduction of the video and that the video was redacted before the jury saw it. Petitioner has not shown prejudice or deficiency. He is not entitled to relief on this issue.

*Failure to Object to an Erroneous Jury Instruction*

Petitioner next claims that trial counsel failed to object to an erroneous jury instruction, specifically the jury instruction on a statement against interest. The State argues that Petitioner is not entitled to relief because he failed to present any proof about this allegation at the hearing on post-conviction relief.

The post-conviction court found Petitioner presented no proof on this issue at the hearing and therefore did not sustain his burden. We agree. Petitioner is not entitled to relief on this issue.

*Failure to Object to the Prosecutor's Statement*

Petitioner argues that trial counsel was ineffective because he failed to object to the prosecutor's comment about his right to remain silent which in turn allowed the jury to equate his silence with guilt. The State argues that the post-conviction court properly found Petitioner failed to sustain his burden.

It appears that Petitioner is complaining about several statements made during closing arguments. In order to provide context, it is important to review the statements in their entirety, not, as the State suggests, "cherry pick[ed]" statements from different portions of the argument. At trial, the Prosecutor made the following comments during closing argument:

> Just like I told you in opening, he killed her, and, out of guilt, he went inside to commit suicide. Period. He may have already started committing suicide.

He knew what he was there to do. There's no other explanation; there's no phantom assassin that decide[d] to come to Bellamy Lane and kill [the victim].

Defense counsel argued in response:

In the beginning of this process, I asked every one of you, and you agreed that [Petitioner] had the right to remain silent and that you would not use that against him and that we had no responsibility to prove anything or present any alternatives that the State has just told you. [Counsel for the State] said that there's no other things that have been presented to you. It's in the jury instructions. We're not presenting alternatives.

In final closing argument, counsel for the State argued:

First of all, I didn't say [Petitioner] should provide anything. What I asked is you – as the trier of fact, you get to decide what all that means. We tell you what we perceive it to be. This wasn't a random day.

. . . .

They want me to prove things that can only possibly come from the mouth of [Petitioner]. The State doesn't have access to that. We're not required at all – he's certainly not required to help us. We have to prove this is what we – he went to that residence. If you don't think there's something – why did he take the Uber to that residence on that day that he picks up his medication? There's no reason to go to the residence.

The post-conviction court found that Petitioner took some of the statements out of context but when reviewed in context, "it is clear that the prosecutor's argument acknowledged [Petitioner's] right to remain silent" and Petitioner presented no proof that the result of the proceedings would have been different if trial counsel objected to the statements. We agree. Petitioner has failed to satisfy his burden and is not entitled to relief.

*Failure to Withdraw as Counsel*

Petitioner argues that he filed a motion to remove trial counsel and trial counsel failed to do so. Petitioner also insists that the trial court "ignored" his motion until the first day of trial and did not ask Petitioner if he knowingly and voluntarily waived those motions. The State disagrees, noting that Petitioner withdrew his motion to remove

- 22 -

counsel. The State argues that the post-conviction court properly found that Petitioner was not entitled to relief.

The post-conviction court found that Petitioner presented "no proof that the result of the proceedings would have been different if trial counsel had withdrawn." We agree. Petitioner has failed to show how he was prejudiced by trial counsel's failure to withdraw. Moreover, Petitioner withdrew his motion. He is not entitled to relief.

### Failure to File a Motion for Speedy Trial

Citing the Sixth Amendment, Petitioner argues that trial counsel was ineffective for failing to file a motion for speedy trial. Petitioner insists that the delay in his trial was not caused by the Covid-19 pandemic but rather was "deliberate" on the part of trial counsel and the prosecutor. Petitioner complains that he filed a pro se motion for speedy trial that was withdrawn for "no reason" by trial counsel. The State insists there was no prejudice as a result of the delay.

The post-conviction court found that the State requested a continuance on March 4, 2020, and that any other continuances were granted at the request of Petitioner. In other words, Petitioner failed to show any proof, much less clear and convincing proof, that he was prejudiced by any delay. We agree. Petitioner is not entitled to relief on this issue.

### Failure to Argue Voluntary Manslaughter

Petitioner complains that trial counsel was ineffective for failing to argue that he committed voluntary manslaughter. The State counters that trial counsel argued that the jury could find him guilty of the lesser included offense of voluntary manslaughter.

The post-conviction court found trial counsel argued that voluntary manslaughter was a choice the jury could consider during deliberation. In other words, Petitioner failed to present clear and convincing evidence that trial counsel did not argue voluntary manslaughter to the jury or that he was somehow prejudiced. The record supports the post-conviction court's conclusion. Petitioner is not entitled to relief on this issue.

### Failure of Appellate Counsel to Rely on State v. Burgess

Petitioner argues that appellate counsel failed to "challenge the fact that the State had prosecuted [Petitioner] for especially aggravated burglary based on the same conduct as the felony murder offenses," citing *Burgess*, 2010 WL 3025524, to support his position. The State insists that *Burgess* would not give Petitioner relief.

- 23 -

In *Burgess*, there was a similar set of facts in that an order of protection was in place at the time of the murder. On appeal, this Court found the defendant could not be found guilty of especially aggravated burglary because the ex parte order of protection had not been filed at the time of the murder. *Id.* at *4-6. As a result, this Court modified the defendant's judgment to aggravated burglary. *Id.* at *10.

In Petitioner's case, appellate counsel argued on appeal that the evidence was insufficient to support the convictions for both felony murder and especially aggravated burglary because "as the owner of the residence, he could not be guilty of the burglary of the residence." *Houbbadi*, 2023 WL 8525144, at *6. In resolving the issue on appeal in *Burgess*, this Court noted that a jury could "reasonably conclude that the amended order of protection was a 'valid court order or order of protection' that legally restrained [Petitioner] from the marital residence at the time of the crimes, . . . [so] the evidence is sufficient." *Id.* It appears that appellate counsel for Petitioner relied on the definition of "owner" similarly to the analysis of *Burgess.*

The post-conviction court found that *Burgess* was more detrimental to Petitioner's case than helpful. We agree. In Petitioner's case, the order of protection was in place at the time of the victim's murder. Moreover, in our review, it appears that appellate counsel actually tried to use the rationale of *Burgess* to support his argument that Petitioner could not be found guilty of especially aggravated burglary. Therefore, Petitioner has failed to show clear and convincing evidence that trial counsel was ineffective. Accordingly, he is not entitled to relief on this issue.

*Failure of Post-conviction Court to Address All Issues in Petition*

Petitioner next argues that the post-conviction court failed to address all the issues raised in the amended petition and "did not contain written findings of fact and conclusions of law with regard to each ground raised." Petitioner specifically refers to the "ineffective assistance of counsel caused by the court" and "right to discharge or substitute counsel." Deciphering Petitioner's argument, it appears he is complaining that the post-conviction court did not address his argument that he was denied the right to counsel of his own choice and that the trial court improperly denied his pro se motion to fire trial counsel.

The State concedes, and we agree, that the post-conviction court did not make specific findings of fact and conclusions of law with respect to these two issues. Petitioner filed a pro se petition for relief and two amended petitions for relief, in total spanning over 100 pages. Generally, a post-conviction court is required to "enter a final order," "set forth in the order or a written memorandum of the case all grounds presented," and "state the findings of fact and conclusions of law with regard to each ground." T.C.A. § 40-30-111(b). While this requirement has been construed as mandatory, a post-conviction court's

failure to follow this requirement does not necessitate reversal. *State v. Swanson*, 680 S.W.2d 487, 489 (Tenn. Crim. App. 1984). The legislature intended this requirement to facilitate appellate review of the lower court's proceedings, and "the failure to meet the requirement neither constitutes constitutional abridgement nor renders the conviction or sentence of the appellant void or voidable." *Id.* The post-conviction court's findings on related ineffective assistance of counsel issues and its general denial of the petition provide this Court with insight regarding the post-conviction court's conclusions and a foundation for appellate review. Because we are not required to remand this case for a more thorough order, we will review the substance of Petitioner's claims.

Petitioner argues that his "dissatisfaction" with counsel deprived him of his Sixth Amendment right to counsel. This is not a cognizable claim in a post-conviction proceeding. Moreover, a review of the record indicates that both trial counsel and appellate counsel (but possibly not sentencing counsel) were retained by Petitioner, removing any consideration of the "choice of counsel" argument that would apply to an indigent defendant. *See generally*, *State v. Carruthers*, 35 S.W.3d 516, 546 (Tenn. 2000). As to Petitioner's argument that he was denied his Sixth Amendment right to counsel during trial and sentencing, we are somewhat perplexed. Petitioner was represented by counsel at both of these stages of the proceedings against him. Petitioner insists that he "fired" counsel and the trial court "reappointed" counsel over his objection. However, Petitioner failed to provide clear and convincing evidence that he was not represented at any stage of the proceeding, save the post-conviction proceedings at which he insisted on proceeding pro se. Petitioner is not entitled to relief on this issue.

*Conclusion*

For the foregoing reasons, the judgment of the post-conviction court is affirmed in all respects.

S/Timothy L. Easter
_____
TIMOTHY L. EASTER, JUDGE

- 25 -